[Cite as *Keathley v. Keathley*, 2016-Ohio-5296.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Sarah M. Keathley, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 15AP-901 |
| v. | : | (C.P.C. No. 13DR-786) |
| Joseph L. Keathley, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 9, 2016

**On brief:** *Samuel H. Shamansky Co., L.P.A., Samuel H. Shamansky* and *Donald L. Regensburger,* for appellant. **Argued:** *Donald L. Regensburger.*

**On brief:** *Sabath & Johnson Co., L.P.A.,* and *Mark K. Sabath,* for appellee. **Argued:** *Mark K. Sabath.*

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations

HORTON, J.

{¶ 1} Plaintiff-appellant, Sarah M. Keathley ("Sarah"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting the motion for relief from a paternity determination under R.C. 3119.961 filed by her ex-husband, defendant-appellee, Joseph L. Keathley ("Joseph"). For the reasons set forth below, we vacate the judgment of the trial court and remand with instructions to make the determination required by R.C. 3119.962(B).

**I. Facts and Procedural Background**

{¶ 2} Sarah gave birth to M.K. on July 11, 2007. (Oct. 20, 2015 Tr. at 6.) After the birth, Joseph signed an Acknowledgment of Paternity Affidavit ("APA") that acknowledged his paternity of M.K. (Tr. at 9-10.) Joseph and Sarah were subsequently

married on May 9, 2009. (Oct. 2, 2013 Jgmt. Entry at 1.) Sarah later gave birth to B.K., whose paternity is not at issue. *Id.*

{¶ 3} On March 4, 2013, Sarah filed a complaint for divorce. The complaint alleged that M.K. "was born as the result of the sexual relationship between" Joseph and Sarah, and that "no other male could be the father" of Sarah's children. (Mar. 4, 2013 Compl. at ¶ 2.) The complaint sought a decree of divorce and an order establishing Joseph's parentage of M.K. *Id.*

{¶ 4} After Joseph failed to appear or defend in the divorce action, the trial court entered a judgment entry and decree of divorce. (Oct. 2, 2013 Jgmt. Entry.) The trial court found that Joseph had executed the APA, had not rescinded it within the time allowed by statute, and was M.K.'s legal father with an established parent-child relationship to her. *(*Jgmt. Entry at 2.) Accordingly, Joseph was ordered to pay child support for both M.K. and B.K. (Jgmt. Entry at 3.)

{¶ 5} On March 12, 2015, Sarah filed a motion for contempt alleging that Joseph had failed to pay any amount of the court-ordered child support obligation. (Mar. 12, 2015 Mot. for Contempt.)

{¶ 6} On May 27, 2015, Joseph filed a motion under R.C. 3119.961, seeking relief from the paternity determination of M.K. (May 27, 2015 Mot. of Def. for Relief from Paternity Determination.) In support of the motion, Joseph argued that he was not the child's biological father, that he had "felt coerced into signing the APA" by Sarah without realizing "the long-term impact" of signing it, and that he had only intended to give M.K. the "continuity" of having his surname. *Id.* at 2.

{¶ 7} On July 20, 2015, Sarah and Joseph signed a stipulation acknowledging that, although Joseph had signed the APA, he was not M.K.'s biological father, and that neither party requested genetic testing to determine parenthood. (July 20, 2015 Agreed Stipulation.)

{¶ 8} On August 27, 2015, the trial court held a hearing on Joseph's motion. Sarah's attorney opposed granting the motion, arguing that Joseph had neither rescinded the APA under R.C. 3111.28 nor filed a motion under Civ.R. 60(B). (Aug. 27, 2015 Tr. at 4-5.) Sarah testified that although Joseph was not M.K.'s biological child, he "voluntarily took her on as a child." (Tr. at 7.) She and Joseph both testified that he was not M.K.'s

biological father and that genetic testing of her parenthood was unnecessary. (Tr. at 7, 10.) From the bench, the judge sustained the motion, ruling as follows:

> Based upon the testimony that I've heard and I do understand the emotional ties that the child has to Mr. Keathley, if he is not the biological father, he has no obligation to continue to maintain that relationship.
>
> The Court will find that the motion for relief from paternity determination should be granted based on the testimony of both parties that he is not the natural and biological father of [M.K.]. It is so ordered.

(Tr. at 11.)

{¶ 9} In an entry filed the same day, the court ordered the APA to be "set aside and otherwise held for naught," the removal of Joseph's name from M.K.'s birth certificate, and the recalculation of his child support obligation. (Aug. 27, 2015 Jgmt. Entry at ¶ 1-3.)

{¶ 10} Sarah appeals, asserting the following assignments of error:

> [I.] The trial court committed plain error by granting Appellee's request for relief from paternity without considering applicable statutory provisions.
>
> [II.] The trial court's decision granting Appellee's request for relief from paternity constituted an abuse of discretion.

{¶ 11} In support of both assignments of error, Sarah argues that the trial court failed to apply the statutory provisions that govern granting relief from paternity determinations under R.C. 3119.961 and 3119.962. (Appellant's Br. at 10-16.)

{¶ 12} In response, Joseph asserts that he has a "substantive right" to have the paternity determination set aside, the child support order vacated, to have M.K.'s birth certificate altered, and to be reimbursed for any child support he has paid to date. (Appellee's Br. at 10.) He argues that all of the applicable statutory factors have been met in this case, and that the trial court did not abuse its discretion when it sustained his motion and disestablished his paternity of M.K. *Id.* at 11. Joseph also accuses Sarah of committing a "fraud" against him by falsely alleging in the divorce complaint that he was M.K.'s biological father. *Id.* at 13.

## II. Standard of Review

{¶ 13} An abuse of discretion standard of review typically applies to final orders disestablishing paternity. *Benford v. Smith*, 10th Dist. No. 04AP-908, 2005-Ohio-2561, ¶ 11. Under this standard, the question is whether the decision of the trial court "evinces an attitude that is 'unreasonable, arbitrary or unconscionable.' " *Id.*, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 14} However, as explained in more detail below, Sarah did not object to the trial court's failure to apply some of the "applicable statutory provisions" mentioned in her first assignment of error. (Appellant's Br. at 4.) "Failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal," unless the appellant identifies plain error. *Noble v. Noble*, 10th Dist. No. 07AP-1045, 2008-Ohio-4685, ¶ 20, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). Thus, plain error review applies to the matters to which Sarah did not object, and she appropriately invokes this standard in her first assignment of error. Because "the plain error doctrine is not favored" in civil appeals, it "may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss* at paragraph one of the syllabus.

## III. Analysis

{¶ 15} Under R.C. 3119.961, "a person may file a motion for relief from a final judgment, court order, or administrative determination or order that determines that the person * * * is the father of a child or from a child support order under which the person or male minor is the obligor." In enacting this provision, "the General Assembly intended to create a substantive right to address potential injustice" arising from an erroneous paternity determination when "a person would be forced to support a child that is not his." *State ex rel. Loyd v. Lovelady*, 108 Ohio St.3d 86, 2006-Ohio-161, ¶ 14 (construing R.C. 3119.961 and its predecessor statute, former R.C. 3113.2111, and concluding they express the same legislative intent).

{¶ 16} Sarah makes two arguments in support of her first assignment of error, which we will address separately. First, she argues that the trial court failed to make the

necessary findings that R.C. 3119.962(A) requires before a court may grant a father's request for relief from a paternity determination. (Appellant's Br. at 10-12.) Under R.C. 3119.962(A)(1), such relief is mandatory if three conditions are met:

> Upon the filing of a motion for relief under section 3119.961 of the Revised Code, a court shall grant relief from a final judgment, court order, or administrative determination or order that determines that a person or male minor is the father of a child or from a child support order under which a person or male minor is the obligor if all of the following apply:
>
> (a)  The court receives genetic test results from a genetic test administered no more than six months prior to the filing of the motion for relief that finds that there is a zero per cent probability that the person or male minor is the father of the child.
>
> (b)  The person or male minor has not adopted the child.
>
> (c)   The child was not conceived as a result of artificial insemination in compliance with sections 3111.88 to 3111.96 of the Revised Code.

{¶ 17} The language of the statute "is plain and unambiguous," and the "statute requires all three elements to be present before a trial court may grant relief from a parentage determination or child support order." *Hardy v. Wilson*, 9th Dist. No. 05CA008815, 2006-Ohio-4532, ¶ 17-18.

{¶ 18} Here, the trial court made no finding on any of the three conditions under R.C. 3119.962(A)(1). Instead of requiring genetic test results, the trial court accepted the parties' stipulation and their testimony as evidence of Joseph's non-paternity. (Aug. 27, 2015 Jgmt. Entry.) At the hearing, the trial court made an oral ruling sustaining Joseph's motion and granting the relief he sought solely "based on the testimony of both parties that he is not the natural and biological father of [M.K.]." (Aug. 27, 2015 Tr. at 11.) This was error, given that the legislature has imposed an objective standard of scientific proof demonstrating a "zero per cent probability that the person * * * is the father of the child" as a condition to granting relief from a paternity determination. R.C. 3119.962(A)(1)(a). The trial court also made no determination regarding the other two factors, adoption under R.C. 3119.962(A)(1)(b) or artificial insemination under R.C. 3119.962(A)(1)(c).

{¶ 19} However, Sarah invited the error that she identifies in the trial court's failure to properly apply R.C. 3119.962(A)(1). "Under the doctrine of invited error, an appellant cannot attack a judgment based on error the appellant induced the court to commit or for which the appellant is actively responsible." *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 12AP-307, 2012-Ohio-6232, ¶ 18, citing *In re J.B.*, 10th Dist. No. 11AP-63, 2011-Ohio-3658, ¶ 10, citing *Daimler/Chrysler Truck Fin. v. Kimball*, 2d Dist. No. 2007-CA-07, 2007-Ohio-6678, ¶ 40, citing 5 Ohio Jurisprudence 3d, Appellate Review, Section 448, at 170-71 (1999, Supp.2007). Although she now claims it was plain error for the trial court not to require a genetic test, her own actions induced the trial court to ignore that statutory requirement. Prior to the hearing, Sarah stipulated that "neither Plaintiff nor Defendant is requesting genetic testing - as each swear and affirm that there is no possibility that Defendant is the biological father." (Agreed Stipulation.) At the hearing, her attorney stated that because there was "no question" that Joseph was not M.K.'s father, "genetic testing would be a waste of everybody's time and money." (Tr. at 5.) During her testimony, Sarah affirmatively stated that it was "not a question at all" that Joseph was not M.K.'s father, and that she did not seek genetic testing. (Tr. at 7.) Although the court erroneously failed to apply R.C. 3119.962(A)(1), her own actions induced the trial court not to make the determination that would have been most probative of Joseph's non-paternity. Accordingly, she invited any resulting error, and is precluded from attacking the trial court's judgment based on that error. *Wolf-Sabatino* at ¶ 18.

{¶ 20} Sarah fares better with her second argument, which she also makes in support of her second assignment of error. She argues that the trial court failed to consider R.C. 3119.962(B), which prevents granting relief from a paternity determination when the evidence shows that the person knew he was not the natural father at the time he acknowledged paternity. This error was preserved in the lower court. At the hearing, both Sarah and her attorney asserted that Joseph knew that he was not M.K.'s father before signing the APA, and her attorney urged the court to overrule the motion for that reason. (Tr. at 5, 9.) Thus, we may review the trial court's failure to apply R.C. 3119.962(B) under an abuse of discretion standard, as Sarah's second assignment of error asserts. Accordingly, we overrule her first assignment of error, turn to the second assignment of

error, and consider whether the trial court abused its discretion by failing to apply R.C. 3119.962(B). The statute states:

> A court *shall not grant relief from a final judgment*, court order, or administrative determination or order that determines *that a person* or male minor *is the father of a child* or from a child support order under which a person or male minor is the obligor *if the court determines, by a preponderance of the evidence, that the person or male minor knew that he was not the natural father of the child before any of the following*:
>
> (1) Any act listed in divisions (A)(2)(a) to (d) and (A)(2)(f) of this section occurred.
>
> (2) The person or male minor was presumed to be the natural father of the child under any of the circumstances listed in divisions (A)(1) to (3) of section 3111.03 of the Revised Code.
>
> (3) The person or male minor otherwise admitted or acknowledged himself to be the child's father.

(Emphasis added.) R.C. 3119.962(B).

{¶ 21} One of the acts referenced by R.C. 3119.962(B)(1) is: "The person or male minor was named in an acknowledgment of paternity of the child that has become final." R.C. 3119.962(A)(2)(d). Thus, if a person knows that he is not the natural father of a child, but nevertheless signs an acknowledgement of paternity that becomes final, a court *may not* grant him relief from a paternity determination. If a court finds by a preponderance of the evidence that the R.C. 3119.962(B) exclusion applies, it must deny a father's motion for relief from a paternity determination. *See, e.g., Rozhon v. Rozhon*, 9th Dist. No. 05CA0075-M, 2006-Ohio-3118; *Newton v. Dunn*, 4th Dist. No. 03CA2701, 2003-Ohio-5523; *Vah v. Mahan*, 7th Dist. No. 04BE52, 2006-Ohio-3476.

{¶ 22} R.C. 3119.962(B) expresses the Ohio legislature's intention to categorically deny relief to a person who willingly assumes legal paternity, with full knowledge of the fact of non-biological paternity, only to later succumb to regret. The trial court had a different standard. According to the trial court, if a person "is not the biological father, he has no obligation to continue to maintain that relationship." (Tr. at 11.) Applying its own standard, the trial court granted Joseph's motion for relief from paternity. In doing so, it

unreasonably and arbitrarily substituted its own policy for that of the Ohio legislature, and therefore abused its discretion. *Blakemore* at 219.

{¶ 23} In this case, R.C. 3119.962(B)(1) required the trial court to determine whether a preponderance of the evidence showed that Joseph knew he was not M.K.'s natural father when he signed the APA. If so, the statute would preclude granting Joseph's request for relief from paternity. The trial court found only that Joseph was "not the natural and biological father of [M.K.]," but made no finding as to whether Joseph knew that fact at the time he acknowledged paternity. (Tr. at 11.) The record is not clear on this crucial issue of fact. Although Sarah testified that Joseph knew he was not M.K.'s father when he signed the APA, Joseph's own testimony does not address his state of mind at the time he signed it. (Tr. at 7-10.) The issue is further clouded by language in Joseph's Memorandum in Support of his Motion for Relief stating that he "*now* has reason to believe that he is not the biological father of" M.K. (Emphasis added.) (May 27, 2015 Mot. for Relief at 2.)  This suggests the discovery of this fact prompted him to file the motion, which occurred well after he signed the APA. Because the record is unclear, the trial court must make a determination regarding when Joseph knew that he was not M.K.'s father in order to properly consider the R.C. 3119.962(B) exclusion. Accordingly, we sustain the second assignment of error.

{¶ 24} Having overruled appellant's first assignment of error but sustained the second assignment of error, we reverse the trial court's judgment and remand with instructions to make the determination required by R.C. 3119.962(B).

*Judgment reversed;*
*cause remanded.*

TYACK and BRUNNER, JJ., concur.

——————————————